Charles F. SMITH,
Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMISSION; U.S. Attorney General,
Respondents–Appellees.

No. 86–2116.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 8, 1988.

Decided June 17, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc March 21, 1989.

As Amended Aug. 4, 1989.

Charles F. Smith, Phoenix, Ariz., pro se.

George Chris Stoll, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for respondents–appellees.

Before WRIGHT, WALLACE and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Smith, a federal prisoner, appeals from the district court's dismissal of his petition for a writ of habeas corpus which he filed pursuant to 28 U.S.C. § 2241. Smith seeks to have this court credit his federal sentence for time that he served in state custody as a result of (1) the federal authorities' alleged administrative error in failing to take him into federal custody, and (2) his financial inability to post bail in the state court. As additional grounds for claiming credit on his federal sentence, Smith alleges that the United States Parole Commission (Parole Commission) violated the ex post facto clause of the United States Constitution by applying current parole guidelines to his earlier parole violation, and that the Parole Commission deprived him of his constitutional right to counsel prior to his parole revocation hearing. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

I

In 1975, Smith was convicted of federal bank robbery in United States District Court in the Northern District of Georgia. He received a 15–year sentence from which he was paroled on July 8, 1980. Shortly after his release, he violated the terms of his parole by failing to report to his probation officer and failing to advise his probation officer of his change of address. As a result of this conduct, the Parole Commission issued a parole violator warrant for his arrest on August 29, 1980.

On October 14, 1980, Smith was arrested in California on state robbery and assault charges. Smith was arraigned, pled not guilty, and bail was set at $200,000. Because he could not afford to post bail, Smith remained in state custody while awaiting disposition of the charges against him. Based upon the Parole Commission's violator warrant, a detainer was placed on Smith. Thereafter, the Parole Commission supplemented the original warrant to in-

clude the state robbery and assault charges, as well as an unrelated drunk driving conviction.

On May 1, 1981, Smith pled guilty to the state charges stemming from the 1980 bank robbery and was sentenced to an 11–year prison term. Under the terms of Smith's plea agreement, the state court ordered the state sentence to run concurrently with any federal sentence and credited his state sentence for the time that he had already served in state custody.

While Smith was in state prison, the California state correctional authorities notified the Parole Commission in a letter dated July 14, 1981, that Smith had requested and received approval for a transfer to federal custody. A post-release analyst for the Parole Commission replied on July 30, 1981, that the Parole Commission would not accept Smith's transfer until the state decided "to relinquish complete jurisdiction" over Smith. On October 13, 1981, the Parole Commission notified Smith of a pending dispositional revocation review regarding his parole violations. Upon receipt of the notice, Smith requested a court-appointed attorney to assist him in preparing a written statement for consideration by the Parole Commission during the dispositional review. Smith, however, did not obtain an attorney until after he received notice that his federal detainer would remain on file. Following a dispositional revocation hearing, at which Smith was represented by counsel, the Parole Commission revoked Smith's parole. The Parole Commission also ordered that Smith would not receive credit for his time on parole or served in state prison.

Smith then filed a petition in federal district court seeking a writ of habeas corpus. The district court dismissed the petition as "patently meritless," but advised Smith that he could file a new petition on the ground that he was entitled to withdraw his guilty plea in the state court, but only after he had exhausted his state remedies on that issue. Instead of pursuing relief through the state court as suggested by the district judge, Smith filed a second habeas corpus petition asserting eleven new grounds for relief. The district court determined that, because Smith had not abused the writ process, his petition need not be dismissed as successive. Reaching the merits, however, the district court dismissed the petition in its entirety. Smith timely appeals.

We review de novo a district court's denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Vermouth v. Corrothers*, 827 F.2d 599, 601 (9th Cir.1987) (*Vermouth*). On appeal, Smith raises four of the eleven grounds for relief that he asserted in the district court. In addition, he raises one additional claim for the first time on appeal. We will address each claim for relief in turn.

## II

■ Smith first contends that we should credit his federal sentence for time spent in state custody, because the Parole Commission erred in failing to take him into custody in July of 1981 so that he could serve his state sentence concurrently with his remaining federal sentence. He argues that the federal authorities had already exercised their discretion by deciding to take him into custody, but failed to execute their decision only because they mistakenly believed that the state had not yet surrendered jurisdiction over him. To address this claim, we would need to address two novel issues in this circuit: (1) whether a decision rendered by the Parole Commission pursuant to a discretionary statute, 18 U.S.C. § 4210(b)(2),[1] confers on a parolee a

---

1. 18 U.S.C. § 4210(b)(2) provides:

   (2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer

legally protected interest, and, if so, (2) whether the federal courts possess the jurisdiction to enforce a violation of this interest by ordering the Parole Commission to give credit to a prisoner's federal sentence for time previously served in state custody.

We have previously stated that the "Parole Board has the sole authority to decide when a parole violation warrant will be executed," *Lepera v. United States,* 587 F.2d 433, 435 n. 1 (9th Cir.1978) (per curiam), and that the federal government has no duty to take anyone into custody. *See Spigner v. United States,* 452 F.2d 1208, 1209 (9th Cir.1971) (per curiam). Moreover, we recognize that "there is no statutory provision that accords a prisoner credit against a federal sentence for time served in a state prison on a state charge." *Raines v. United States Parole Commission,* 829 F.2d 840, 843 (9th Cir.1987) (per curiam). We are aware of no case in which we decided whether the Parole Commission's failure to carry out a decision to take a state prisoner into federal custody that it rendered pursuant to its discretionary authority can give rise to a claim for credit for time served in state prison on a state charge. We need not do so in this appeal, however, because the record does not demonstrate that the Parole Commission decided to take Smith into federal custody.

In his petition, Smith correctly points out that on July 14, 1981, state prison officials wrote to the Parole Commission declaring that California had approved him for transfer to federal custody. Smith contends that by this letter the state surrendered jurisdiction over him. He asserts that the Parole Commission's July 30, 1981, reply confirmed that it wished to assume custody over Smith, but that the Parole Commission mistakenly believed that the state had not yet relinquished jurisdiction over him. This alleged misperception on the part of the Parole Commission, Smith concludes, entitles him to credit on his federal sentence.

When scrutinized in greater depth, however, the correspondence between the state prison authorities and the Parole Commis-

sion does not support Smith's allegations. In its July 14, 1981, letter, California correctional authorities stated that Smith "has requested and received approval for transfer to Federal Authority *In re Stoliker.*" (*In re Stoliker,* 49 Cal.2d 75, 315 P.2d 12 (1957), granted a state prisoner's request for a transfer to federal custody to allow him to serve his state sentence concurrently with a federal sentence.) They also apprised the Parole Commission of Smith's state conviction and sentence and requested the Parole Commission to advise the state regarding its decision whether to assume custody over Smith. Nowhere in this letter, though, did the state declare that it was relinquishing jurisdiction over Smith at that time.

Explicitly responding to this letter, the Parole Commission wrote that "[u]pon the decision of California State authorities to relinquish complete jurisdiction of subject [Smith] to the U.S. Parole Commission, the Marshall will execute our warrant and take custody. Until that time, however, *the Commission has no intention of accepting this case as a transfer.*" (Emphasis added.) From this statement, it is clear that the Parole Commission refused the transfer, requiring the state first "to relinquish complete jurisdiction" of Smith. Because the state never expressed an intent to relinquish complete jurisdiction in its July 14, 1981, letter, the Parole Commission was not laboring under a misperception of the state's intent. If in fact the Parole Commission had misconstrued the state's intent, the state could have responded to the Parole Commission's reply. The State, however, took no further action. Hence, the record does not support Smith's allegation that the Parole Commission misconstrued the state's intent to relinquish control over Smith.

The only evidence relied on by Smith that clouds this clear picture is a statement made by a hearing examiner at Smith's dispositional revocation hearing on July 5, 1983, in response to a query by Smith about why the Parole Commission did not take him into federal custody in July of

than the maximum term for which he was

sentenced in connection with such offense.

1981: "[I]t is unfortunate, but our Mr. Capodanno [a post release analyst for the Parole Commission] must have thought they were trying to send you to us as a Boarder case." We do not believe that the Parole Commission should be bound by such an offhand, unadorned statement by a hearing examiner. It is unclear what the hearing examiner meant by the remark, and Smith has not pointed to any other evidence expounding or clarifying the hearing examiner's comment. Moreover, even if we were to interpret the hearing examiner's remark as indicating his belief that the Parole Commission had erred, his belief is clearly unfounded based on the only other evidence on the issue: the July 1981 correspondence between the State and the Parole Commission.

Because we conclude that the federal authorities committed no error by not assuming custody of Smith in 1981, we need not decide whether Smith's claim for credit can be legally supported. Thus, we affirm the district court's decision denying Smith's claim for credit on his federal sentence based on alleged misunderstandings of the Parole Commission.

### III

■ Relying on *United States v. Gaines,* 449 F.2d 143 (2d Cir.1971) (per curiam) (*Gaines*), Smith next maintains that had he been financially able to post bail on October 15, 1980, he would have been taken into federal custody, and would thereby have availed himself of the state judge's recommendation that he serve his state sentence concurrently with the remainder of his federal sentence. He reasons that because his indigency has caused him, in effect, to serve his federal sentence consecutively, rather than concurrently, with his state sentence, he has suffered discrimination on the basis of his lack of wealth in violation of the equal protection clause.

In *Gaines,* the petitioner was arrested on state charges on June 1, 1968, while on bail from a federal narcotics conviction pending sentencing. After receiving his federal sentence on June 20, 1968, for the narcotics conviction, the federal authorities returned him to state custody. The petitioner remained in state custody from June 20, 1968, until April 1, 1970. On December 5, 1969, the state set bail, but he was financially unable to post bail on his state charges. On April 1, 1970, the state paroled the petitioner from state custody and transferred him to federal custody to begin serving his federal sentence. Subsequently, the state charges against him were dismissed. *Id.* at 144.

On remand from the Supreme Court, the Second Circuit first stated that the petitioner was unable to enter into federal custody on December 5, 1969, after bail was set "solely because he lacked sufficient funds to post bond in the state court which held him custody." *Id.* Construing the Supreme Court's decisions in *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), as establishing the principle that "a man should not be kept imprisoned solely because of his lack of wealth," 449 F.2d at 144, the Second Circuit then held that the petitioner was entitled to credit on his federal sentence for time spent in state custody after bail was set until the time he was transferred to federal custody. 449 F.2d at 144.

We have not adopted the rule announced by the Second Circuit in *Gaines. See United States v. Perno,* 605 F.2d 432, 433 (9th Cir.1979) (indicating that the court might follow *Gaines* in an appropriate case, but declining to address the issue squarely because the petitioner's request for relief was premature in that he had not yet begun serving his federal sentence). As in *Perno,* this appeal does not require us to decide whether to adopt *Gaines* as the law in this circuit. Even if we adopted the *Gaines* rule, it would be of no help to Smith in this case. The critical factor in *Gaines,* which is absent from Smith's case, was that the state eventually dismissed the charges for which the petitioner was serving time in lieu of posting bail. Consequently, if the petitioner were not given credit on his remaining federal sentence, the time that he spent in state custody in lieu of bail would

have been "dead time," that is, time that was not being served in connection with *any* valid sentence, either state or federal.

Subsequent decisions by the Second Circuit itself confirm that *Gaines* applies only where failure to give credit would result in the prisoner serving such "dead time." *See Paroutian v. United States,* 471 F.2d 289, 290 (2d Cir.1972); *McGinnis v. United States ex rel. Pollack,* 452 F.2d 833, 836 (2d Cir.1971), *cert. denied,* 406 U.S. 905, 92 S.Ct. 1606, 31 L.Ed.2d 815 (1972). Each case we have found outside the Second Circuit discussing the *Gaines* rule has either expressly limited it to situations involving "dead time," or has applied it only where failure to do so would have resulted in the prisoner having to serve "dead time." *See United States v. Blankenship,* 733 F.2d 433, 434–35 (6th Cir.1984) (reading *Gaines* as resulting from the fact that because the state charges were subsequently dismissed, "there was no state sentence against which to credit time accrued in presentence custody"); *Doyle v. Elsea,* 658 F.2d 512, 515, 518–19 & n. 7 (7th Cir.1981) (per curiam) (even if state charges are subsequently dismissed, *Gaines* does not entitle petitioner to credit on his detainer-related sentence where his time spent in state custody has already been credited to a second federal sentence imposed for a crime committed while he was on parole from his detainer-related sentence); *United States v. Grimes,* 641 F.2d 96, 99 n. 6 (3rd Cir. 1981) (limiting *Gaines* to a situation involving " 'dead time,' which arises only in the absence of a state conviction"); *United States v. Hubbard,* 618 F.2d 422, 425 (7th Cir.1979) (per curiam) (remanding to district court to determine whether, in light of *Gaines,* petitioner should be accorded federal credit for time served on a state conviction that was subsequently voided); *Ange v. Paderick,* 521 F.2d 1066, 1067–68 (4th Cir.1975) (remanding to district court to consider whether to credit petitioner's state sentence for time spent as a federal prisoner awaiting federal trial, where failure to do so would result in petitioner serving time that was credited to neither his state nor federal sentence); *Lebosky v. Saxbe,* 508 F.2d 1047, 1051 (5th Cir.1975)

(remanding to district court to consider claim for credit in light of *Gaines,* but not opining whether *Gaines* applied to facts of case); *United States v. Downey,* 469 F.2d 1030, 1031–32 (8th Cir.1972) (per curiam) (applying *Gaines* to situation where state sentence was suspended, thereby creating "dead time"). We have found no court of appeals decision that has applied the *Gaines* principle to a situation not raising the spectre of "dead time."

Given the unanimous position of our sister circuits, we conclude that even if we adopted the *Gaines* rule, we would not extend it to cases that do not create the potential for "dead time." In the instant case, Smith does not suggest that his time spent in state custody will amount to "dead time" if we refuse to credit his federal sentence. On the contrary, he concedes that the time he spent in state prison was pursuant to a judgment of conviction imposed after a plea agreement with the state. He has not sought to challenge the validity of his plea. Moreover, the state judge has already credited his state sentence for the time that Smith was incarcerated prior to his conviction. Hence, we reject Smith's claim that equal protection dictates that his federal sentence be credited because he lacked the wherewithal to post bail on his state offenses in October of 1980.

## IV

Smith also contends that the Parole Commission violated the ex post facto clause of the United States Constitution by applying a parole regulation that was in effect at the time of his 1983 revocation hearing, rather than those in effect in 1980. Although a parole violator warrant was issued against Smith in August of 1980, he was not given a revocation hearing until July of 1983. During the interim, the Parole Commission promulgated revised regulations, applicable to all revocation hearings conducted on or after August 31, 1981, which, according to Smith, denied him the opportunity to serve most of the remainder of his federal sentence concurrently with his state sentence—an opportunity that

was available under regulations that were in effect in 1980.

Clearly, *guidelines* of the Parole Commission, 28 C.F.R. §§ 2.20–2.21, are not laws for purposes of the ex post facto clause. *Vermouth*, 827 F.2d at 604; *Wallace v. Christensen*, 802 F.2d 1539, 1553–54 (9th Cir.1986) (en banc) (*Wallace*). Smith contends that a parole *regulation* was retroactively applied during his dispositional revocation hearing. Smith maintains that when he violated his parole in 1980, then-applicable provisions of 28 C.F.R. § 2.47 (1980) would have allowed the unexpired portion of his original federal sentence to begin running concurrently with his state sentence after he had served only 18 months on his state conviction. Under the 1981 version of section 2.47, which remained in effect through 1983 when Smith was given his hearing and which was applied to Smith by the Parole Commission, Smith alleges that he was not entitled to any such concurrency provision.

A "law" that increases the punishment over that permitted to be imposed when the crime was committed violates the ex post facto clause. *See Wallace*, 802 F.2d at 1553. Even if Smith's reading of the two versions of section 2.47 is correct, we hold that, like the parole guidelines set forth in 28 C.F.R. § 2.20, the regulation involved is a mere procedural guidepost without the characteristics of law. *Id.*

▮ That the directive before us is denominated a "regulation," rather than a "guideline," does not necessarily render it a "law" for purposes of ex post facto scrutiny. Nor does its appearance in the Code of Federal Regulations decide the issue; the parole guidelines are printed in the Code also. We conclude, instead, that the operative factor in assessing whether a directive constitutes a "law" for ex post facto purposes is the discretion that the Parole Commission retains to modify that directive or to ignore it altogether as the circumstances may require. *See id.* at 1554 (observing that the Parole Commission "retains the discretion to set presumptive parole dates above or below the Guidelines for 'good cause' "); *see also Inglese v. United States Parole Commission*, 768

F.2d 932, 936 (7th Cir.1985) (*Inglese* ) ("The power to exercise discretion indicates that the [parole] guidelines are merely guides, and not law: guides may be discarded when circumstances require; laws may not."). Ex post facto concerns do not obtain where a regulation serves not as a binding constraint on the administrative decisionmaking process, but merely as a guide to the proper exercise of discretion. *See Inglese*, 768 F.2d at 936–37; *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir.1977).

Close examination of the relevant provisions of the 1980 version of section 2.47 convinces us that this regulation vested the Parole Commission with sufficient discretion to disregard its instructions that we should consider it the functional equivalent of a parole guideline. The Parole Commission has never regarded the·concurrency provisions of the 1980 version of section 2.47 as a mandatory prescription. Rather, section 2.47(c)(2) expressly proclaims that it is merely "the *general policy* of the Commission" that the unexpired portion of a prisoner's original federal sentence shall recommence and run concurrently thereafter with the state sentence then being served upon completion of 18–months' service on the state sentence. (Emphasis added.) The comments of the Parole Commission in the Federal Register explicating the reasons behind the 1981 revisions of section 2.47 clarify that this regulation embodies only a presumptive policy. *See* Paroling, Recommitting and Supervising Federal Prisoners, 46 Fed.Reg. 35,635, 35,635–36 (1981). Thus, the 1980 version of section 2.47 was no more binding on the Parole Commission's exercise of discretion than are the parole guidelines codified in section 2.20.

Discretion to alter presumptive parole dates provided in a Parole Commission directive, as we recognized in *Wallace*, 802 F.2d at 1554, removes that directive from the purview of the ex post facto clause. *See also Inglese*, 768 F.2d at 936–37. Such discretion, in effect, makes section 2.47(c)(2) the same as a parole guideline that the Parole Commission consulted in arriving at the first approximation of a

prisoner's appropriate release date. Just as the Parole Commission had discretion whether to follow the parole guidelines, discretion to deviate from the policy set forth in section 2.47(c)(2) in 1980 was explicitly contemplated, particularly in cases like the one before us, where individual circumstances so warranted.

Our conclusion that no ex post facto violation occurred in this case is consistent with the Seventh Circuit's decision in *Rodriguez v. United States Parole Commission*, 594 F.2d 170 (7th Cir.1979). In *Rodriguez*, the Seventh Circuit held that the ex post facto clause is violated by the retroactive application of a parole regulation that denies a prisoner sentenced under 18 U.S.C. § 4205(b)(2) *any* meaningful opportunity to be considered for parole. *Id.* at 170, 176. Here, by contrast, the parole regulation before us merely affected Smith's presumptive parole date, much like the parole guidelines do. In addition, unlike the discretionary nature of section 2.47 in 1980, the prior parole regulation involved in *Rodriguez required* a hearing for any prisoner at the one-third point of his sentence. The newly-applied regulation eliminated the prisoner's right to such a hearing. *See id.* at 172. Not surprisingly, the court in *Rodriguez* distinguished parole guidelines from that regulation on the grounds that parole guidelines are merely an aid to the Parole Commission's exercise of its discretion. *See id.* at 176 n. 9.

For similar reasons, we find the Supreme Court's decision in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), distinguishable. In that case, the Court held that the retroactive repeal of a state statutory provision that *automatically entitled* prisoners to credit on their sentence for good behavior ran afoul of the ex post facto clause, notwithstanding that the successor statute provided for discretionary good time credit. *See id.* at 35–36, 101 S.Ct. at 967–968. Again, we point out that

the instant case, by contrast, involves the retroactive amendment of a discretionary policy, not a mandatory requirement. Thus, we find no *ex post facto* violation in the Parole Commission's application in 1983 of its 1981 regulations to Smith's 1980 parole violations. The district court properly rejected Smith's *ex post facto* claim.

### V

■ Turning to Smith's fourth ground for relief, he urges us to credit his federal sentence because he was denied counsel before his dispositional record review. While the Constitution does not confer an absolute right to an attorney during a parole revocation proceeding, *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763–1764, 36 L.Ed.2d 656 (1973), under Department of Justice regulations, a federal parolee may request a court-appointed attorney to assist him in preparing a written application containing information relevant to the disposition of his warrant. *See* 28 C.F.R. § 2.47(a)(2) (1987).[2]

■ Although Smith applied for a court-appointed attorney as provided under 28 C.F.R. § 2.47(a)(2), he apparently did not obtain counsel until *after* his dispositional record review. We have found no court of appeals case construing the attorney provision of section 2.47(a)(2). Under the facts of this case, however, we need not decide whether section 2.47(a)(2) creates a right to an attorney, the denial of which entitles a prisoner to credit on his federal sentence. Even if Smith had a right to an attorney, he is entitled to habeas corpus relief only if he shows that he has suffered some prejudice. *See Harris v. Day*, 649 F.2d 755, 761–62 (10th Cir.1981) (*Harris*) (absent showing of prejudice, delay in obtaining appointment of counsel for dispositional hearing did not violate parolee's due process rights); *Standlee v. Rhay*, 557 F.2d 1303, 1307–08 (9th Cir.1977) (burden is on

---

2. Section 2.47(a)(2) provides:
   If the prisoner is serving a new sentence in a state or local institution, the violation warrant shall be reviewed by the Regional Commissioner not later than 180 days following notification to the Commission of such placement. The parolee shall receive notice of the

pending review, and shall be permitted to submit a written application containing information relative to the disposition of the warrant. He shall also be notified of his right to request counsel under the provisions of § 2.48(b) to assist him in completing this written application.

parolee to show that failure to provide particular safeguard was so prejudicial as to be a denial of due process). Smith has not made such a showing.

During the dispositional review, the Parole Commission does not decide whether a parolee's alleged violations warrant revocation of his parole. The only purpose of the review is to determine whether to withdraw the parole violator warrant or to let it stand as a detainer. *See* 28 C.F.R. § 2.47(c) (1987); *see also Harris*, 649 F.2d at 761. In Smith's case, the Parole Commission decided to let the warrant stand. This decision had no immediate effect on Smith's federal parole status or on his state imprisonment. Had the Parole Commission decided to withdraw the detainer at that time, Smith would still have remained in state custody. It was not until his parole revocation hearing that Smith faced the potential loss of his liberty. At this hearing, however, Smith was represented by counsel. Hence, even though Smith did not have an attorney to assist him in preparing a written statement for his dispositional review, he did have an attorney to assist him during the critical portion of his parole revocation proceedings. Therefore, Smith did not suffer any discernable prejudice from any delay in granting his request for a court-appointed attorney. *See Harris*, 649 F.2d at 762. Thus, it is unnecessary for us to decide whether Smith had a right to an attorney pursuant to section 2.47(a)(2) because even if he did, he was not prejudiced because he was represented during the parole revocations proceedings. The district court did not err in dismissing Smith's claim for relief based on the denial of counsel.

## VI

Finally, Smith maintains that it was unfair and prejudicial for the Parole Commission to assign him a category seven rating on the basis of two erroneous state assault charges that had already been dismissed. Because this claim was not raised before the district court, we decline to hear it for the first time on appeal. *See Bolker v.*

*Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985).

AFFIRMED.