On respondent's petition for reconsideration filed October 3, 1991, reconsideration allowed; opinion (107 Or App 515, 812 P2d 443) adhered to March 11, petition for review dismissed May 27, 1992 (313 Or 300)

## FRANKIE LEE WILLIAMS,
*Petitioner,*

*v.*

## BOARD OF PAROLE,
*Respondent.*

(CA A64077)

828 P2d 465

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem, for petition.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Board of Parole (Board) has petitioned for Supreme Court review of our decision, 107 Or App 515, 812 P2d 443 (1991), in which we held that application of Board rules not in effect when petitioner committed his crime and which had the effect of potentially extending his prison term by 10 months violated the *Ex Post Facto* Clauses of the Oregon and federal constitutions. We treat the petition as one for reconsideration, ORAP 9.15, allow it and adhere to our opinion.[1]

In *Williams v. Board of Parole*, 98 Or App 716, 780 P2d 793 (1989), *rev den* 309 Or 522 (1990) (*Williams I*), we held that an *ex post facto* analysis may apply to "Board rules that govern the setting of a parole release date, under both the Oregon and federal constitutions." 98 Or App at 720. Board did not petition for review of that decision. However, in this petition, it argues strenuously that, even if its rules might be subject to *ex post facto* analysis, there is no *ex post facto* problem in this case.

■■ The first of Board's arguments in support of its position is that, because the rules concern reduction in prison terms for "outstanding reformation" while imprisoned, they are not part of the law "annexed" to the offense when it was committed. That argument was rejected by the United States Supreme Court in *Weaver v. Graham*, 450 US 24, 101 S Ct 960, 67 L Ed 2d 17 (1981),[2] where a Florida statute reduced the amount of good time credits that a prisoner could earn over the term of his sentence. Florida argued that there could be no *ex post facto* violation, because the original good time provision was not part of the original sentence and, thus, was not part of the punishment "annexed" to the crime. In rejecting Florida's argument, the Supreme Court restated the principle from earlier *ex post facto* decisions that an enactment that substantially alters the consequences attached to a completed crime changes the "quantum of

---

[1] The facts are fully set out in detail in our earlier opinion. *Williams v. Board of Parole, supra*, 107 Or App at 517.

[2] United States Supreme Court cases are instructive in considering the *ex post facto* prohibition in the Oregon Constitution. *See Williams I, supra*. The state concurs that there is no "apparent reason for a different analysis under the Oregon Constitution."

punishment" and cannot be applied if it operates to a prisoner's detriment.

Board also argues that *ex post facto* considerations should not be applied, because the correct analysis should not focus on the fact that release is affected, but rather on the fact that release is affected as a reward or sanction for *prison* behavior. Under that analysis, it contends, the controlling cases are those in which enactments have been held not to implicate *ex post facto* prohibitions, because they are not "annexed to the crime." *See, e.g., Glynn v. Augur*, 678 F2d 760, 761 (8th Cir 1982); *Dyke v. Meachum*, 785 F2d 276 (10th Cir 1986); *Milhouse v. Levi*, 548 F2d 357, 364 (DC Cir 1976).

The cases on which the Board relies are inapposite. All of them affect the status of inmates in the prison context, not a change from the status *as* inmate, *i.e.*, release from prison. As the Supreme Court stated in *Weaver v. Graham*, *supra*, 450 US at 31:

"[I]t is the effect, not the form, of the law that determines whether it is ex post facto."

Board's attempt to direct the "focus" of analysis cannot avoid the fact that the effect of the rules is to impose a more severe punishment than was assigned to it when the offense occurred. That is squarely within the holding of *Weaver*.

Nonetheless, Board contends that *Weaver* is not "in conflict" with its argument that the rules relate only to prison conduct. It argues that, in *Weaver*, the good time credits were non-discretionary, while here any reduction is based on "outstanding reformation," a discretionary determination of Board. That argument was rejected in *Raske v. Martinez*, 876 F2d 1496 (11th Cir 1989), *cert den* 493 US 933, in which the petitioner, a prisoner, challenged a Florida statute that altered the method by which incentive good time was calculated, decreasing the potential good time available to prisoners. The court held that the principles enunciated in *Weaver v. Graham* controlled and rejected Florida's attempt to distinguish the challenged statute as a "discretionary" provision. The court noted that the statute involved in *Weaver* granted "automatic" good time only for prisoners who had performed assigned work "in a faithful, diligent, industrious, orderly, and peaceful manner." Whether those

conditions had been met depended on a "discretionary" determination by the Department of Corrections. In both *Weaver* and *Raske*, the fact that discretion was involved in whether a reduction would occur did not avoid *ex post facto* considerations. Board's rules also alter the method under which it exercises discretion, but the effect is to lessen petitioner's opportunity for release from prison. We adopt the Eleventh Circuit's reasoning.

Board next contends that no *ex post facto* analysis should be made, because the rules are only "guideposts" for the exercise of its discretion. It urges us to adopt that conclusion from federal cases that hold that changes in federal parole release guidelines do not implicate *ex post facto* considerations, but serve only as directions for the parole commission, which has broad discretion. *See, e.g., DiNapoli v. Northwest Regional Parole Commission*, 764 F2d 143 (2nd Cir), *cert den* 474 US 1020 (1985); *Dufresne v. Baer*, 744 F2d 1543 (11th Cir 1984), *cert den* 474 US 817; *Roth v. United States Parole Commission*, 724 F2d 836 (9th Cir 1984); *Stroud v. United States Parole Commission*, 668 F2d 843 (5th Cir 1982); *Warren v. United States Parole Commission*, 212 US App DC 137, 659 F2d 183 (DC Cir 1981), *cert den* 455 US 950 (1982); *Zeidman v. United States Parole Commission*, 593 F2d 806 (7th Cir 1979).

Whatever discretion the Federal Parole Commission might exercise under its guidelines does not resolve the *ex post facto* implications of rules under which the Oregon Board exercises its discretion. Rules made pursuant to delegated legislative authority are subject to *ex post facto* analysis. *Ross v. Oregon*, 227 US 150, 162-63, 33 S Ct 220 57 L Ed 458 (1913). The consequence of the new rules here, under which the maximum possible reduction in petitioner's prison term is 19.44 percent, is a decrease of .56 percent from the maximum possible reduction under the old rules. The possibility that petitioner will receive a longer prison term than he might have received under the prior rules violates the *ex post facto* clause, because it allows for a greater punishment than was in effect at the time of the offense.

Board's final argument is that, if an *ex post facto* analysis is made, application of the rules did not result in an increase in petitioner's punishment when the rules are

considered as a whole. Board is correct that the proper analysis is a comparison of the provisions of the present and former versions of the law and not speculation on how the versions might be applied. Board concludes that our analysis is flawed, because we speculated about how petitioner might have fared under the two versions of the rules. The "speculation" to which the Board refers was a demonstration of the adverse consequences to petitioner, and Board concedes that *any* scenario would show adverse consequences, because the reason for petitioner's longer prison term is inherent in the rules.

We reject Board's position that the new rules do not impose a greater punishment. It argues that the ameliorative effects of the changes outweigh the "relatively minor" disadvantage in the maximum rate of reduction in prison terms and supports that argument by examples of what might be beneficial to inmates or Board. None of those possibilities changes the adverse consequences to petitioner. Board argues, nonetheless, that

> "the focus in any *ex post facto* analysis always must remain on a comparison of the provisions of the present and former versions of the law, and it should not shift to a comparison of how the two versions of the law were or might have been applied in a single case."

It is true that we compare provisions to determine if the measure of punishment is more severe in the later version than in the earlier and that we do not examine the punishment actually imposed in a single case. *Lindsey v. Washington,* 301 US 397, 57 S Ct 797, 81 L Ed 1182 (1937). That does not mean, however, that we must conclude that a new law disadvantages every prisoner or even the average prisoner before holding that it constitutes an *ex post facto* violation. *Raske v. Martinez, supra,* 876 F2d at 1501 (*quoting Weaver v. Graham, supra,* 450 US at 33-34). It is sufficient that petitioner has shown that the new version could impose a greater punishment on similarly situated prisoners. He has shown that. We adhere to our holding that the rules constitute an *ex post facto* violation as to petitioner and that he is entitled to be considered for release under the rules in effect when his offenses were committed.

Reconsideration allowed; opinion adhered to.