Jerrold S. FLEMMING, Petitioner–Appellant,

v.

OREGON BOARD OF PAROLE, Respondent–Appellee.

No. 92–35151.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1993.

Decided July 12, 1993.

Kathleen M. Correll, Asst. Federal Public Defender, Portland, OR, for petitioner-appellant.

Janet A. Metcalf, Asst. Atty. Gen., Salem, OR, for respondent-appellee.

Before: KILKENNY, TANG, and POOLE, Circuit Judges.

TANG, Circuit Judge:

Jerrold S. Flemming, an Oregon state prisoner, appeals the denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Flemming contends that the district court erred in concluding that the Oregon Board of Parole ("Board") did not violate the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1, when it applied a regulation retroactively in calculating Flemming's parole release date. We agree and therefore reverse.

I.

In 1981, Flemming was convicted of multiple sex offenses under Oregon state law. At

the time of his crimes, a state parole regulation provided that the Board could reduce certain sentences, but that "reductions shall be limited to a maximum of 20% of the prison term under review." Or.Admin.R. § 255–40–025(2) (Apr.1981).[1] Ordinarily, the Board reviews sentences "after the prisoner has served five years of his prison term and every three years thereafter." *Id.* § 255–40–005(1) (setting forth schedule for "periodic reviews"); *see id.* § 255–40–025(2)(a) ("[r]eductions shall customarily be considered at periodic reviews under rule 255–40–005").

The phrase "20% of the prison term under review," *id.* § 255–40–025(2), refers to twenty percent of the entire prison sentence, and not just to twenty percent of the time served as of the parole hearing. *Jeldness v. Board of Parole,* 90 Or.App. 135, 751 P.2d 243, 243–44, *modified on other grounds,* 92 Or.App. 323, 759 P.2d 1102, *review denied,* 307 Or. 245, 767 P.2d 75 (1988). This twenty percent ceiling on sentence reduction is apparently recalculated and applied anew each time the Board reviews a prisoner's sentence. Thus, a prisoner who receives the maximum reduc-

tion at the time of his or her first review may nevertheless receive an additional reduction of up to 20% of the previously revised sentence if there should be another review. *See Williams v. Board of Parole,* 107 Or.App. 515, 812 P.2d 443, 444–45 (1991), *aff'd on reh'g,* 112 Or.App. 108, 828 P.2d 465, *review dismissed,* 313 Or. 300, 832 P.2d 456 (1992). Under the 1981 regulation, the Board can also reduce a sentence by more than twenty percent upon majority vote. Or.Admin.R. § 255–40–025(2).

In 1988, the parole regulations were amended. Section 255–40–025(2), which imposed the twenty percent cap, was replaced with the following provision:

> If the prisoner displays an extended course of conduct indicating outstanding reformation, the Board may grant a reduction of up to seven months of the three year period under review. . . .

Or.Admin.R. § 255–40–025(2) (June 1990).[2]

Also in 1988, the Board met to consider Flemming's first five years of incarceration,

---

1. The 1981 version of the regulation reads in relevant part:

> **Reductions in Prison Terms; Effect of Minimum Terms; Criteria; Limitations**
>
> **255–40–025** (1) An established prison term as defined in section 255–30–005(2) may be reset to an earlier time upon application for review to the chairperson of the Board and after concurrence of a voting majority of the Board . . . :
>
> (a) Reductions in prison terms will ordinarily be granted only in cases where a prisoner can show an extended course of conduct indicating outstanding reformation. Cases will be determined on individual merits; however, the usual criteria will include:
>
> (A) A five-year period of good conduct; and
>
> (B) Demonstrable achievement in dealing with problems present at incarceration and associated with criminal conduct (e.g., psychological disorder, drug or alcohol dependency, lack of educational or vocational skills).
>
> . . . .
>
> (2) Overall, reductions shall be limited to a maximum of 20% of the prison term under review unless a majority of the Board approves a further reduction:
>
> (a) Reductions shall customarily be considered at periodic reviews under rule 255–40–005.
>
> . . . .
>
> (3) A recommendation shall be requested from the institution superintendent on each application considered by the Board.

2. The relevant portion of the regulation effective in 1989 reads:

> **Resetting the Parole Release Date to an Earlier Date**
>
> **255–40–035** (1) An established prison term as defined in section 255–05–005(30), may be reduced under section (2) of this rule upon the prisoner's application for a hearing and the receipt of a recommendation from the parent institution. . . . The Board may at its discretion take administrative action to reset the parole release date to an earlier date.
>
> (2) If the prisoner displays an extended course of conduct indicating outstanding reformation, the Board may grant a reduction of up to seven months of the three year period under review, under this section. Cases will be reviewed based on the following criteria:
>
> (a) The individual merits of each case, however, the criteria may include;
>
> (b) The seriousness of the crime;
>
> (c) The protection of the public;
>
> (d) Demonstrable achievement in dealing with problems present at the time of incarceration and associated with criminal conduct (e.g., psychological disorder, drug or alcohol dependency, lack of educational or vocational skills);
>
> (e) Documented cooperation with authorities while in custody where a substantial benefit is derived by the authorities; and
>
> (f) The absence of disciplinary actions resulting from violation of rules within the three year period.

spanning the years 1981–86. At that time, Flemming's sentence totaled 170 months. The Board concluded that a 12–month reduction was warranted, regardless of which version of section 255–40–025 applied.

In 1989, the Board met again to consider Flemming's sentence. At this time Flemming would have been eligible, under the prior version of section 255–40–025, for a reduction in sentence of up to 31.6 months (*i.e.,* twenty percent of the then-existing 158–month sentence), or more if a majority of the Board so approved. Under the new regulation, however, the maximum reduction was seven months, which is what the Board awarded. In doing so, the Board made no reference to the prior version of section 255–40–025. Instead, consistent with the amended version, the Board only considered the period of incarceration from 1986 to 1989 in deciding upon a further reduction.[3] Based on this additional reduction in sentence, Flemming's parole release date was scheduled for February 27, 1993.[4]

In an unpublished disposition, the Oregon Court of Appeals affirmed the Board's 1989 decision; the Oregon Supreme Court denied review. *Flem[m]ing v. Board of Parole,* 102 Or.App. 691, 795 P.2d 122, *review denied,* 310 Or. 475, 799 P.2d 646 (1990). Flemming then filed this federal habeas petition alleging that his "constitutional rights were violated by ex post facto application of amended Board of Parole rules."

In October 1991, the district court denied the petition on the ground that both versions of section 255–40–025 are discretionary in nature such that "[p]etitioner has no constitutionally cognizable liberty interest under either rule." Flemming timely appeals the denial of his habeas petition.

**3.** Because the Board's 1989 determination did not refer to the prior version of section 255–40–025, we conclude that the Board applied the amended version of the regulation. In the absence of a reference to the prior version, we reject the State's argument that the 1989 reduction would have been the same under either parole regulation.

**4.** On November 10, 1992, the Board rescinded Flemming's 1993 release date. The Board de-

## II.

### A.

We review de novo the denial of a state prisoner's petition for a writ of habeas corpus. *King v. Rowland,* 977 F.2d 1354, 1357 (9th Cir.1992). Whether application of a law violates ex post facto is also reviewed de novo. *United States v. Castro,* 972 F.2d 1107, 1111 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993).

### B.

The Ex Post Facto Clause prohibits, *inter alia,* laws which "make more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood,* 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). "[T]o fall within the *ex post facto* prohibition, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

In *Weaver,* the Supreme Court considered whether a Florida statute reducing the amount of "good time" or "gain time" a state convict could automatically earn violated the Ex Post Facto Clause. 450 U.S. at 25, 101 S.Ct. at 962. The Court concluded that application of the statute evoked the two critical elements indicating an ex post facto violation.

First, the Court noted that the statute used to calculate Weaver's "gain time" was passed after the date of his conviction. *Id.* at 31, 101 S.Ct. at 965. "Thus, the provision

ferred Flemming's parole release date by 24 months, indicating a new release date of February 27, 1995. In calculating this date, the Board relied in part on the rescinded release date. Thus, if the 1989 Board determination violated ex post facto, Flemming's newly scheduled release date would have to be recalculated. The case therefore remains in a posture whereby Flemming can obtain relief; the controversy is not moot.

attaches legal consequences to a crime committed before the law took effect." *Id.* In concluding that the law satisfied the retroactivity prong, the Court considered it unnecessary to determine "whether the prospect of the gain time was in some technical sense part of the sentence." *Id.* at 32, 101 S.Ct. at 966. Instead, the Court found it sufficient that "eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." *Id.*

Second, the *Weaver* Court observed:

On its face, the [Florida] statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison.

*Id.* at 33, 101 S.Ct. at 967. The Court thus considered Weaver to be sufficiently "disadvantaged by the reduced opportunity to shorten his time in prison simply through good conduct." *Id.* at 33–34, 101 S.Ct. at 967.

Relying heavily on the *Weaver* decision, the Oregon Court of Appeals has concluded that retroactive application of the amended version of Or.Admin.R. § 255–40–025 violates ex post facto. *See Williams v. Board of Parole,* 107 Or.App. 515, 812 P.2d 443, 446 (1991), *aff'd on reh'g,* 112 Or.App. 108, 828 P.2d 465, 466–68, *review dismissed,* 313 Or. 300, 832 P.2d 456 (1992). We think this reliance is well-founded.

■ As in *Weaver,* the amended parole regulation here was enacted after Flemming's offenses, yet Oregon used this regulation to calculate Flemming's 1989 sentence reduction. Although the State argues that the parole regulation is not annexed to Flemming's sentence, *Weaver* forecloses this argument. As with the gain time credits in *Weaver,* the parole regulations here affect "eligibility for reduced imprisonment" such that they would be "a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." 450 U.S. at 32, 101 S.Ct. at 966. Thus, application of

amended section 255–40–025 gives rise to the Supreme Court's first "critical element" for an ex post facto violation.

Oregon's application of the revised parole regulation also evokes the second "critical element." Whereas the rule in effect at the time of his offenses apparently would have provided Flemming with the opportunity for a sentence reduction of 31.6 months or more in 1989, the amended rule limited this opportunity to seven months. As in *Weaver,* this "reduced opportunity to shorten his time in prison" demonstrates an ex post facto violation.

The State argues, and the district court agreed, that, because the Board at all times retained discretion in deciding the degree to which a sentence should be reduced, Flemming cannot show an ex post facto violation. The Oregon Court of Appeals rejected this argument. *Williams,* 112 Or.App. 108, 828 P.2d at 466–67. The *Williams* court pointed out that, although the statute at issue in *Weaver* provided for "automatic" good-time credits once an inmate was found to have acted properly, the decision whether the inmate in *Weaver* qualified for the credits was still discretionary in the sense that it required a finding of good conduct. *Id.* (citing *Raske v. Martinez,* 876 F.2d 1496 (11th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989)); *see Weaver,* 450 U.S. at 33, 101 S.Ct. at 966 (statute in question "reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks"); *see also id.* at 26, 35, 101 S.Ct. at 962, 967.

■ Several passages in *Weaver* indicate that it is sufficient for ex post facto purposes if a statute significantly reduces an inmate's early release *opportunities,* regardless if such opportunities are contingent on the exercise of official discretion. In particular, the Court noted that the ex post facto inquiry "looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual." *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966. Thus, it was sufficient that Weaver's "*opportunity* to shorten his time in prison," *id.* at

34, 101 S.Ct. at 967 (emphasis added), was reduced by the statute in question.

Similarly, in *Miller. v. Florida* the Court rejected as irrelevant for ex post facto purposes Florida's argument that the petitioner "cannot show definitively that he would have gotten a lesser sentence," 482 U.S. at 432, 107 S.Ct. at 2452, under the state's sentencing guidelines in effect at the time of petitioner's offense. In reaching its decision, the *Miller* Court relied on *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937).

In *Lindsey,* the Court found violative of the Ex Post Facto Clause Washington's application of a statute that required state courts to impose the maximum sentence prescribed by state law. Under the law in effect at the time of the petitioners' offenses, Washington courts were to impose only an indeterminate sentence. The Court held that, although "petitioners might have been sentenced to fifteen years under the old statute[,] ... [r]emoval of the *possibility* of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will, operates to their detriment" in a manner sufficient to violate ex post facto. 301 U.S. at 401, 57 S.Ct. at 799 (emphasis added).

█ Thus, the Court has summarized *Lindsey* as holding " 'that one is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old.' " *Miller,* 482 U.S. at 432, 107 S.Ct. at 854 (quoting *Dobbert v. Florida,* 432 U.S. 282, 300, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977)). This holding leaves open the door to claims of ex post facto violations arising from laws with discretionary elements. Such elements may mute the constitutional problem, but "[s]ubtle *ex post facto* violations are no more permissible than overt ones." *Collins,* 497 U.S. at 46, 110 S.Ct. at 2721.

In support of its argument that the Board's discretionary powers preclude an ex post facto violation, the State cites *Smith v. United States Parole Comm'n,* 875 F.2d 1361 (9th Cir.1988). In *Smith,* the prisoner challenged the retroactive application of a federal parole regulation which prevented him from receiving credit against his federal sentence for time served in state custody. Under regulations existing at the time of his federal parole violation, Smith had the *"opportunity* to serve most of the remainder of his federal sentence concurrently with his state sentence." *Id.* at 1366 (emphasis added).

We held in *Smith* that application of the revised parole regulation did not violate ex post facto because it was not a "law" for purposes of the Ex Post Facto Clause. *Id.* at 1367–68. In reaching this conclusion, we stated that "the operative factor in assessing whether a directive constitutes a 'law' for ex post facto purposes is the discretion that the Parole Commission retains to modify that directive or to ignore it altogether as the circumstances may require." *Id.* at 1367. Applying this rule to the present case, the State argues that, because the Board was at all times free to refuse any reduction in prison sentences, the parole regulations here are not "laws" for ex post facto purposes.

Our decision in *Smith* is distinguishable from the present case for reasons outlined by the Supreme Court in *Miller v. Florida.* In that case, the Court found "federal parole guidelines cases inapposite" in deciding whether retroactive application of state sentencing guidelines was ex post facto. 482 U.S. at 434, 107 S.Ct. at 2453. The Court cited three reasons for not following the federal parole cases. First, in contrast to cases which "have held that the federal parole guidelines are not 'laws' for purposes of the *Ex Post Facto* Clause," *id.,* Florida regards its sentencing guidelines as having "the force and effect of law," *id.* at 435, 107 S.Ct. at 2453. Second, the *Miller* Court indicated that the Florida sentencing guidelines do not "simply provide flexible 'guideposts' for use in the exercise of discretion: instead, they create a high hurdle that must be cleared before discretion can be exercised." *Id.* Finally, "the revised [sentencing] guidelines directly and adversely affect the sentence petitioner receives." *Id.*

Similarly, Oregon has indicated that its parole regulations have "the force and effect of law." *Miller,* 482 U.S. at 435, 107 S.Ct. at 2453. Specifically, Oregon courts have held that the state's parole regulations are laws for ex post facto purposes. *Williams,* 812 P.2d at 445, 828 P.2d at 467; *Williams v. Board of Parole,* 98 Or.App. 716, 780 P.2d 793, 794–95 (1989), *review denied,* 309 Or. 522, 789 P.2d 1387 (1990). Based on these state court decisions and the *Miller* case, one federal court has already refused to apply federal parole guidelines decisions in cases involving Oregon parole regulations. *See Meyrovich v. Maass,* 762 F.Supp. 1417, 1420 (D.Or.1991).[5]

Second, in amending section 255–40–025, Oregon added the requirement that the "parent institution" normally must recommend a reduction before the Board may reduce a prisoner's sentence. Or.Admin.R. § 255–40–025(1) (June 1990). The new regulation thus imposes a hurdle to be surmounted before the Board can exercise its discretion. Under the 1981 regulation, it was only necessary for the Board to *request* a recommendation. *Id.* § 255–40–025(3) (Apr.1981). The amended regulation also limited the Board's ability to exceed the cap imposed on sentence reductions. *Compare id.* § 255–40–025(2) (Apr. 1981) (providing for reductions in excess of twenty percent) *with id.* (June 1990) (omitting such provision).

Finally, the parole regulations at issue here "directly and adversely affect the sentence petitioner receives." *Miller,* 482 U.S. at 435, 107 S.Ct. at 2454. The effect of retroactively applying the amended provision is to reduce by at least two years the amount of time by which Flemming's sentence might be shortened. Although *Smith* resists such comparisons (and instead looks only to the discretionary nature of the earlier of two

parole regulations), the decision must be questioned on this ground. The difference between the two regulations at issue in *Smith* is substantial. As we noted, retroactive application of the revised regulation in that case "denied [Smith] the opportunity to serve most of the remainder of his federal sentence concurrently with his state sentence." 875 F.2d at 1366. This is exactly the kind of difference *Miller* considers relevant in deciding whether a state provision is subject to ex post facto.[6]

■ We recognize that *Smith* distinguished *Weaver v. Graham* on the ground that,

> the [Weaver] Court held that the retroactive repeal of a state statutory provision that *automatically entitled* prisoners to credit on their sentence for good behavior ran afoul of the ex post facto clause, notwithstanding that the successor statute provided for discretionary good time credit. Again, we point out that the instant case, by contrast, involves the retroactive amendment of a discretionary policy, not a mandatory requirement.

875 F.2d at 1368 (citation omitted). However, this passage overlooks the Supreme Court's teaching that discretionary aspects of a law do not preclude an ex post facto violation. As discussed above, the Supreme Court has repeatedly stated that a criminal defendant need not show that she or he certainly would have received a less onerous punishment under a prior law to establish a constitutional violation. Stated another way, "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964 (footnote omitted).

We thus reject Oregon's argument that the discretion with which the Board is charged precludes an ex post facto violation. Follow-

---

**5.** Although it is a federal question "[w]hether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor," *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966, the decision in *Miller* clearly makes relevant the manner in which a state regards one of its laws challenged as ex post facto. We thus decline the State's invitation to reassess the view of its own courts on the nature of Oregon's parole regulations.

**6.** Such differences, evident both here and in *Smith,* indicate that the regulations in question are not merely "procedural" such that the Ex Post Facto Clause would not apply. *See Dobbert,* 432 U.S. at 293–94, 97 S.Ct. at 2998 (holding change in statute to be procedural and therefore exempt from ex post facto prohibition because "there was no change in the quantum of punishment attached to the crime").

ing *Miller v. Florida,* we think our decision in *Smith* is best limited to the context of federal parole guidelines and their related regulations.[7]

The State's last argument is that, when other changes in state parole regulations are taken into account, Flemming was not in fact subject to a more onerous punishment than the one applicable when he committed his crimes. Specifically, the State points to changes in the Board's ability to override multiple minimum sentences. At some point, the Board could only override all or none of a prisoner's multiple minimum sentences. Later, the Board could override individual minimum sentences. Because the Board applied the later provision to override two of Flemming's three minimum sentences, the State argues that Flemming's opportunity for early release remained unchanged viewing the parole regulations as a whole, even if application of the amended section 255-40-025 was more onerous.

The State made a similar argument in *Williams* and the Oregon Court of Appeals rejected it. 828 P.2d at 467-68. We do the same. Although the Supreme Court has suggested that simultaneous changes to two or more substantive criminal provisions might offset each other for ex post facto purposes, *see Miller,* 482 U.S. at 431-32, 107 S.Ct. at 2451-52, the decision in *Weaver* indicates that the two provisions must be related. In refusing to look beyond the provisions at issue in finding an ex post facto violation, the *Weaver* Court stated that "none of [the other] provisions for extra gain time compensates for the [automatic] reduction of gain time available solely for good conduct." 450 U.S. at 35, 101 S.Ct. at 967. Instead, to compensate for any difference in the rules governing automatic gain time, the Court noted that inmates had to depend on the favorable exercise of discretion by authorities. *Id.* The *Weaver* Court thus refused to consider the effect of the statute at issue "in conjunction with other provisions enacted with it." *Id.* at 34, 101 S.Ct. at 967.

Similarly, Oregon inmates must depend on a favorable decision to override multiple minimum sentences before such decisions can compensate for the reduced opportunity in sentence reductions. As in *Weaver,* the onerous change in sentence reduction opportunities can only be compensated by a favorable exercise of discretion in overriding multiple minimum sentences. *Weaver* teaches that this is not sufficient for one provision to offset the ex post facto effect of a change in another provision.

In sum, the Supreme Court decision in *Weaver* indicates that Flemming suffered an ex post facto violation when, in 1989, the Board considered him eligible for a maximum reduction in sentence of only seven months.

### III.

The district court erred in concluding that retroactive application of Or.Admin.R. § 255-40-025 as amended does not violate the Ex Post Facto Clause. We reverse and remand with instructions that an appropriately tailored writ issue unless, within a reasonable period to be determined by the district court, the State of Oregon recalculates Flemming's 1989 sentence reduction under the former version of section 255-40-025 and redetermines Flemming's parole release date accordingly.

**REVERSED and REMANDED.**

---

**7.** Two justices have indicated a need for the Supreme Court to consider cases such as *Smith* which hold that the federal parole guidelines and related regulations are not "laws" for ex post facto purposes. *·See Bailey v. Noot,* —— U.S. ——, ——–——, 112 S.Ct. 1516, 1516-17, 117 L.Ed.2d 652 (1992) (White, J., joined by Blackmun, J., dissenting from denial of certiorari).