870 P.2d 1184

178 Ariz. 88

**Daniel SANCHEZ, Petitioner–Appellee,**

v.

**Charles RYAN, Director Department of Corrections, Respondent–Appellant.**

**No. 1 CA–HC 92–0005.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 23, 1993.

Review Denied April 19, 1994.

OPINION

CONTRERAS, Presiding Judge.

The state appeals from the superior court's order releasing appellee Daniel Sanchez from the custody of the Arizona Department of Corrections ("ADOC") pursuant to a writ of habeas corpus. The trial court ordered appellee released because it found that the application of an ADOC administrative order promulgated after appellee committed his offense extended appellee's period of incarceration in violation of state and federal constitutional provisions prohibiting ex post facto laws. We vacate the trial court's order because we conclude that the application of the administrative order to appellee did not violate ex post facto prohibitions.

*BACKGROUND*

Appellee pled guilty to one count of negligent homicide and received a sentence of four years' imprisonment. He was classified as parole eligible, class one. *See generally* A.R.S. § 41–1604.06 (1992). A.R.S. section 41–1604.07(A)(1) entitles prisoners with this classification to earn release credits.

Prior to 1986, A.R.S. section 41–1604.07(B) provided that release credits would be deducted from and reduce the term of imprisonment imposed. Pursuant to this statute, prisoners were automatically released on the date that their release credits, when added to the time that they had served, equaled the sentence imposed. This release date was then known as the "sentence expiration" date.

The legislature amended section 41–1604.-07(B) in 1986 to provide that release credits would no longer reduce the term of imprisonment imposed.[1] 1986 Ariz.Sess.Laws, ch. 200, § 2. At the same time, it added subsection (D) to the statute. *Id.* Subsection (D) provides that the director of ADOC, pursuant to rules that ADOC has promulgated, *may* authorize the release of any prisoner on the date that his release credits, when added to

Beus, Gilbert & Morrill by Shelton L. Freeman and Sara J. Vance, Phoenix, for petitioner-appellee.

Grant Woods, Atty. Gen. by Lynne W. Abney, Asst. Atty. Gen., Phoenix, for respondent-appellant.

---

1. As amended, A.R.S. section 41–1604.07(B) provides as follows:
   Release credits earned by a prisoner pursuant to subsection A of this section shall not reduce

the term of imprisonment imposed by the court on such prisoner nor reduce the sentence imposed on the prisoner for the purpose of determining such prisoner's parole eligibility.

the time served, equal the sentence imposed.[2] This date is now known as the earned release credit date. *See* A.R.S. § 41–1604.07(D).

Appellee committed his offense on February 23, 1989. He was sentenced to a four-year term of imprisonment on July 24, 1989. He received credit for six months of presentence incarceration. His earned release credit date was December 21, 1991. His sentence expiration date was February 22, 1993. Although he had accumulated the requisite number of release credits and had not forfeited any of them, he was not released on his earned release credit date. He filed a petition for a writ of habeas corpus on January 16, 1992.

At the hearing on appellee's petition, counsel for the state informed the trial court that at the time appellee committed his offense, ADOC had not promulgated any rules concerning earned release as section 41–1604.-07(D) authorized it to do. She further stated that the director had a *practice* at that time of releasing all prisoners who reached their earned release credit dates. This meant that at the time appellee committed his offense, the director had a *practice* of treating earned release credits as though they reduced the term of imprisonment imposed even though section 41–1604.07(B) had been amended more than two years earlier to provide that they would no longer do so.

A.R.S. section 41–1604.07(C) provides that the director may reclassify a prisoner and declare any release credits that he has earned forfeited if the prisoner does not adhere to prison rules and regulations and participate in educational, treatment, or training programs. At the hearing, counsel for the state explained that at the time appellee committed his offense, prisoners who did not adhere to prison rules and regulations and participate in the available programs never reached their earned release credit dates because they were reclassified and the credits that they had earned were forfeited.

Counsel further explained that although appellee had not been reclassified and had not forfeited any of his release credits, he was detained beyond his earned release credit date *in accordance with Director's Management Order (DMO) 91–03.* This order was promulgated on May 1, 1991, more than two years after appellee committed his offense. It provides that earned release is only available to prisoners who meet certain criteria and who are granted release by the director. Some of the criteria involve the prisoner's correctional classification profile, which is an evaluation of the prisoner based upon certain factors. DMO 91–03 provides that a prisoner must have a public risk factor of 3 or below to be eligible for earned release. Because appellee had a public risk factor of 4, he was not released on his earned release credit date.

In the petition for a writ of habeas corpus, appellee argued that as applied to him, DMO 91–03 violated the provisions of the state and federal constitutions that prohibit ex post facto laws. He based this argument on *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In *Weaver,* the United States Supreme Court considered an amendment to the statute that governed Florida's equivalent of earned release credits. The amendment reduced the amount of release credits that prisoners could earn. The Court held that the state had violated the ex post facto prohibition of the federal constitution by applying the amendment to prisoners who had committed their offenses before the amendment's effective date.

In the present proceeding the hearing on appellee's petition was held on June 16, 1992. At the hearing, counsel for the state admitted that before DMO 91–03 became effective, ADOC's practice was to release prisoners on their earned release credit dates even if their public risk factor was greater than 3. Counsel noted, however, that from 1986 on, section 41–1604.07(D) gave the director discretion to refuse to release a prisoner who had reached his earned release credit date. She

---

**2.** As amended, A.R.S. § 41–1604.07(D) provides in pertinent part as follows:

The Director, according to rules promulgated by the department, may authorize the release of any prisoner who has earned release credits which, when added to the time served by the prisoner, equal the sentence imposed by the court which shall be the prisoner's earned release credit date.

therefore maintained that the application of DMO 91–03 to appellee did not violate the ex post facto prohibition. At the conclusion of the hearing, the trial judge indicated that he intended to order that appellee be released.

Three days later, counsel for the state filed as a supplemental authority a pen-and-ink amendment to DMO 91–03. The amendment, which was to become effective on June 24, 1992, provided as follows:

> The Director retains the absolute discretion to modify this Order, as necessary, or to ignore it altogether as circumstances require. Such override may be made in the Director's sole and absolute discretion when needed to promote institutional safety and security or to account for other unique concerns. This Order is not a binding constraint on the Director's administrative decision-making process, but merely serves as a guide to the Director's proper exercise of his sole discretion.

The trial court ordered that appellee be released on July 21, 1992. The state filed a timely notice of appeal from this order.

### DISCUSSION

■ Both the state and federal constitutions prohibit the enactment of ex post facto laws. U.S. Const. art. 1, §§ 9, 10: Ariz. Const. art. 2 § 25. An ex post facto law is one that makes criminal an act that was innocent when it was committed, increases the punishment for or aggravates any crime previously committed, alters or reduces the proof required for conviction at the time that the alleged offense was committed, or deprives the accused of a substantial right or immunity which he possessed at the time that the alleged offense was committed. *State v. Van Arsdale,* 133 Ariz. 579, 580, 653 P.2d 36, 37 (App.1982). A criminal law is ex post facto if it applies to events occurring before its enactment and disadvantages the offender affected by it. *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964. Administrative rules and regulations may have the force and ef-

fect of law, *Herzberg v. David,* 27 Ariz.App. 418, 420, 555 P.2d 677, 679 (App.1976), and therefore may be subject to the ex post facto prohibition. *See Arnold v. Arizona Board of Pardons and Paroles,* 167 Ariz. 155, 158, 805 P.2d 388, 391 (App.1991).

■ On appeal, the state argues that DMO 91–03 did not implicate ex post facto concerns because it did not represent a change in the law that existed when appellee committed his offense. It notes that at the time in question, section 41–1604.07(D) provided that the director, in accordance with rules promulgated by ADOC, could release prisoners who had reached their earned release credit dates. It contends that no statute, rule, or regulation *required* the director to release all prisoners who had reached their earned release credit dates and that the director's *practice* of doing so did not have the force and effect of law. We agree.

Appellee has not cited any statute, rule, or regulation that was in effect at the time he committed his offense that *required* the director to release him when he reached his earned release credit date. He has also not cited, and we have not found, any authority for the proposition that an administrative *practice,* as opposed to an administrative rule or regulation, can have the force and effect of law for ex post facto purposes. Because DMO 91–03 did not represent a change in the law that existed when appellee committed his offense, it did not violate the constitutional prohibitions against ex post facto laws. *Knapp v. Cardwell,* 513 F.Supp. 4, 17 (D.Ariz.1980), *aff'd* 667 F.2d 1253 (9th Cir. 1982), *cert. denied* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982) (ex post facto clause only prohibits detrimental substantive alterations of applicable law at time alleged offense was committed).[3]

Appellee also argues that when he committed his offense, ADOC's Internal Management Policy (IMP) 303.10 mandated the release of prisoners who had reached their

---

**3.** We note in passing that we disagree with the state's interpretation of section 41–1604.07(D) as reflected by the pen-and-ink amendment to DMO 91–03. The state contends that section 41–1604.-07(D) gives the director absolute discretion to override any relevant rules to deny the release of

a prisoner who has reached his earned release credit date. Section 41–1604.07(D) does not give the director this discretion. It specifically provides that the director must exercise his discretion in accordance with the rules that ADOC has promulgated.

earned release credit dates. We disagree. IMP 303.10 deals with the *provisional* release of prisoners who are within 180 calendar days of completing their sentences. *See* A.R.S. § 31–411(F). Although it defines the phrase "earned release credit date," it does not mandate that prisoners be released on that date.

### CONCLUSION

For the reasons stated, we vacate the trial court's order releasing appellee from custody.

KLEINSCHMIDT and HAIRE, JJ., concur.

Note: Judge Levi Ray Haire, a retired judge of the Court of Appeals, was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 20, of the Arizona Constitution, and A.R.S. section 38–813.