92 F.3d 1192
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lesile Andrew HANLON, Plaintiff-Appellee,
v.
Samuel A. LEWIS, Defendant-Appellant.
 No. 95-15869.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1996.
Decided July 23, 1996.
 
 1
 Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Samuel A. Lewis, Director of the Arizona Department of Corrections, appeals the district court's denial of his motion for summary judgment on the basis of qualified immunity on Leslie Andrew Hanlon's 42 U.S.C. § 1983 complaint alleging an ex post facto violation regarding his sentence. We conclude that the district court correctly denied defendant Lewis's assertion of qualified immunity, and affirm.
 
 
 4
 In 1988, plaintiff Leslie Hanlon was charged in Pinal County Superior Court with embezzlement. He entered into a plea agreement and, on July 25, 1988, was sentenced to a term of 5.25 years. His sentence expiration date was set at April 29, 1993.
 
 
 5
 Arizona state law provides an opportunity for parole-eligible prisoners to earn release credits. A prisoner's earned release credit date is the date when the sum of the release credits earned and actual time served equals the sentence imposed. In its decision denying the defendant's qualified immunity assertion, the trial court stated that Hanlon's earned release credit date was set at November 5, 1991.[1]
 
 
 6
 At the time of Hanlon's offense, Arizona law gave the director of the Arizona Department of Corrections (ADOC) authority, pursuant to rules promulgated by the ADOC, to release any prisoner on his earned release credit date.[2] At the time of Hanlon's offense, it was the practice of the department routinely to release prisoners on that date.
 
 
 7
 At the commencement of his custody, Hanlon was given an administrative classification profile. A classification profile consists of two parts: a "P" score reflecting the inmate's risk to the public; and an "I" score reflecting the inmate's institutional risk. Both scores range from one to five, with five representing the greatest risk. On March 8, 1990, after he was found guilty of three major rule violations, Hanlon's classification profile was raised to 5/5, the maximum in both categories. At the time of his conviction, and on March 8, 1990, an inmate's classification profile did not bear on his earned release credit date: neither official policy nor department practice linked them. Indeed, defendant Lewis concedes that throughout this time prisoners were routinely released on their earned release credit dates with classification profiles of 5/5.
 
 
 8
 On May 1, 1991, more than three years after the offense for which Hanlon was sentenced occurred and more than a year after his classification profile was raised to 5/5, the ADOC promulgated the Director's Management Order (DMO) 91-03. DMO 91-03 provided that in order to qualify for release at the earned release credit date, an inmate must have a correctional classification profile with a P factor of 3 or below, and an I factor of 4 or below. Under the order, those inmates who meet such a profile, whose underlying offense allows for earning release credits, and who have earned release credits, are automatically approved for release on their earned release credit dates; those who do not meet the required profile are automatically denied earned release credit date release.
 
 
 9
 On August 19, 1991, Hanlon's status was reviewed for earned release eligibility, and he was deemed ineligible, pursuant to DMO 91-03, because his classification profile was too high. Hanlon was not released until his sentence expired on April 29, 1993.
 
 
 10
 Defendant Lewis is entitled to qualified immunity in a suit for civil damages insofar as his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 11
 We conclude that defendant Lewis's retroactive application of DMO 91-03 in this case violated a right sufficiently clearly established that a reasonable official would have understood that he was violating that right.
 
 
 12
 Article I of the Constitution provides that neither Congress nor any state shall pass any ex post facto law. U.S. Const. art. I, § 9, cl. 3, art. I, § 10, cl. 1. The Supreme Court has announced a two-prong test to determine whether the application of a penal law violates the ex post facto clause. "[F]irst, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.' " Miller v. Florida, 482 U.S. 423, 429 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)).
 
 
 13
 An ex post facto law is not simply one that makes criminal an act that was lawful at the time it was committed, or a law that increases a sentence following the commission of the act for which punishment is imposed. Rather, this court has held that "[t]he ex post facto provision applies to a wide range of changes affecting trial procedures and the mechanics of punishment." U.S. v. Paskow, 11 F.3d 873, 876 (9th Cir.1993).
 
 
 14
 In Flemming v. Oregon Bd. of Parole, 998 F.2d 721 (9th Cir.1993), the Ninth Circuit struck down as an ex post facto law an amended state parole regulation that merely reduced the "opportunity" for early release. The court relied on the reasoning of the leading Supreme Court cases, and particularly on Weaver, stating that "it is sufficient for ex post facto purposes if a statute significantly reduces an inmate's early release opportunities, regardless if such opportunities are contingent on the exercise of official discretion." Id. at 724 (emphasis in the original).
 
 
 15
 The regulation promulgated by defendant Lewis when retroactively applied to Hanlon similarly deprived him of the opportunity to reduce his time in prison. As the trial court noted in granting plaintiff Hanlon's motion for summary judgment on the issue of liability, "Before DMO 91-03, plaintiff was eligible for release on his earned release credit date, and after DMO 91-03 he was not."
 
 
 16
 Appellant Lewis relies on Smith v. United States Parole Commission, 875 F.2d 1361 (9th Cir.1989) and Wallace v. Christensen, 802 F.2d 1539 (9th Cir.1986), to argue that, because "[t]he ADOC Director retained at all times since 1986, the absolute discretion to regulate the earned credit release of prison inmates," the prohibition against ex post facto laws does not attach. He contends that the fact that the Director had discretion to promulgate rules means that the DMO is not a "law" for the purposes of ex post facto analysis, but rather a "mere procedural guidepost without the characteristics of law." Smith, 875 F.2d at 1367. Lewis's reliance on Smith is misplaced.
 
 
 17
 The Supreme Court has held that retroactive application of a statute which mandates a punishment that had been discretionary at the time the crime was committed violates the ex post facto clause. See Lindsey v. Washington, 301 U.S. 397, 400-02 (1937). Thus, "Lindsey establishes 'that one is not barred from challenging a change in the penal code on ex post facto grounds simply because the sentence he received was not more onerous than that which he might have received under the old.' " Miller, 482 U.S. at 432 (1987).
 
 
 18
 The "discretion" delegated to the ADOC Director under Arizona state law is not sufficient to render earned release credit date regulations mere "procedural guideposts without the characteristics of laws," in line with Smith. Rather, A.R.S. § 41-1604.07(D) delegates rulemaking authority to the ADOC to establish binding regulations for determining when a prisoner will be released on his earned release credit date. After DMO 91-03 was promulgated, the ADOC Director did not have discretion to "ignore" the directive "altogether as circumstances require," as the test set out in Smith requires. Smith, 875 F.2d at 1367.
 
 
 19
 Finally, Lewis's reliance on Smith is misplaced most clearly because in Flemming, this court, relying on well-settled Supreme Court precedent-- Weaver, Miller, and Lindsey--expressly limited Smith "to the context of federal parole guidelines and their related regulations." Flemming, 998 F.2d at 727. Lewis's contentions that the retroactive application of DMO 91-03 did not violate the ex post facto violation are without merit.
 
 
 20
 Lewis next argues that even if his decision to apply DMO 91-03 retroactively violated the prohibition against ex post facto laws, plaintiff Hanlon cannot establish that the 'contours' of his rights were 'sufficiently clear' that Lewis should have understood that his actions were unlawful. Lewis argues that the "mixed state of existing ex post facto analysis" entitles him to qualified immunity, even if a violation occurred. Lewis is only able to muster two cases to support his contention that Hanlon's rights were not clearly established.
 
 
 21
 In arguing for qualified immunity, Lewis argues that because the court's decision in Flemming to limit Smith expressly to its facts was not handed down until 1993, he was entitled to rely on Smith in 1991 when DMO 91-03 was promulgated. Such a contention is without merit. Lewis's reading of Smith was as implausible in 1991 as it is now. That Flemming was not decided until 1993 does not weaken its holding that prior Supreme Court precedent limited Smith : in Flemming, the court merely made explicit what was clear in the light of overwhelming Supreme Court precedent.
 
 
 22
 Lewis also relies heavily on the fact that the Arizona Court of Appeals, in considering the same issue raised in this case, found no ex post facto violation. Sanchez v. Ryan, 178 Ariz. 88, 870 P.2d 1184 (App.1993). This argument is more persuasive, however it is not dispositive. The Sanchez case was decided after Flemming, yet it fails to cite Flemming, or any other relevant Ninth Circuit or Supreme Court ex post facto decisions, with the single exception of Weaver, in concluding that no ex post facto violation occurred. That a court joined Lewis in his obvious error, does not convert the disregard of existing law into a reasonable mistake. Lewis is not entitled to qualified immunity simply by relying on a state ruling that failed to consider controlling precedent.
 
 
 23
 We conclude that, in light of Lindsey, Weaver, and Miller, Lewis's decision to retroactively apply the provisions of DMO 91-03 violated a clearly established constitutional right of which a reasonable person would have known. Accordingly, we affirm the district court's denial of qualified immunity.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Defendant in his opening brief on appeal states that Hanlon's original earned credit release date was estimated to be January 5, 1992. We do not resolve this potential dispute as it in no way affects the decision on qualified immunity
 
 
 [2]
 A.R.S. § 41-1604.07(D) provides in pertinent part: "The director, according to rules promulgated by the department, may authorize the release of any prisoner who has earned release credits which, when added to the time served by the prisoner, equal the sentence imposed by the court which shall be the prisoner's earned release credit date."