IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP –5 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| DAVID GARCIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2 CA-SA 2006-0040 |
| | ) | DEPARTMENT B |
| HON. CHRISTOPHER BROWNING, | ) | |
| Judge of the Superior Court of the State | ) | |
| of Arizona, in and for the County of Pima, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20044702

JURISDICTION ACCEPTED; RELIEF GRANTED

D. Jesse Smith and Anthony Payson                                         Tucson
                                                       Attorneys for Petitioner

Barbara LaWall, Pima County Attorney
  By Taren M. Ellis                                                        Tucson
                                                  Attorneys for Real Party in Interest

Osborn Maledon, P.A.
  By Daniel L. Kaplan                                                     Phoenix
                                                    Attorneys for Amicus Curiae
                                             Arizona Attorneys for Criminal Justice

E S P I N O S A, Judge.

¶1 This special action presents the issue whether the current version of A.R.S. § 13-205, Arizona's statute on affirmative defenses, enacted as an emergency measure pursuant to article IV, pt. 1, § 1(3) of the Arizona Constitution and effective on April 24, 2006, applies to criminal defendants such as petitioner David Garcia who allegedly committed first-degree murder before the effective date of the statute but whose case has yet to be tried. We find it does and conclude the respondent judge erred when he determined otherwise.

**BACKGROUND**

¶2 On December 13, 2004, Garcia was charged by indictment in CR-20044702 with first-degree murder, allegedly committed on December 5, 2004. In accordance with the version of § 13-205 then in effect, the grand jury was instructed that justification defenses, including self-defense, are affirmative defenses that a defendant must prove by a preponderance of the evidence. Garcia thereafter disclosed various justification defenses, including self-defense, third-party defense, and crime prevention. *See* A.R.S. §§ 13-404, 13-406, 13-411.

¶3 In April 2006, the legislature passed Senate Bill 1145, which amended the language of § 13-205 to exclude justification defenses from among the affirmative defenses that can be raised in a criminal action. 2006 Ariz. Sess. Laws, ch. 199, § 2, effective

2

April 24, 2006; *see also* 2006 Ariz. Sess. Laws, ch. 199, § 1 (amending A.R.S. § 13-103(B) to provide that an "[a]ffirmative defense does not include any justification defense pursuant to chapter 4 of this title"). Section 13-205(A) now provides that, if a defendant presents any "evidence of justification pursuant to chapter 4 of this title[,] . . . the state must prove beyond a reasonable doubt that the defendant did not act with justification." Section 6 of chapter 199 provides as follows: "This act is an emergency measure that is necessary to preserve the public peace, health or safety and is operative immediately as provided by law." The governor signed S.B. 1145 on April 24, 2006, and it became effective on that date. *See* Ariz. Const. art. IV, pt. 1, § 1(3).

¶4        Garcia filed his second motion to remand the case to the grand jury soon after, requesting that it be instructed on the justification defenses pursuant to the current version of § 13-205. Garcia also filed a motion to instruct the jury in accordance with the new statute at the upcoming trial. After a status conference on May 9, the respondent judge denied the motions, finding that, based on the legislature's clear intent, the statute was not retroactively applicable and, therefore, did not apply to Garcia's case.[1] This special action followed.

---

[1]The respondent judge had previously denied a motion to remand the case for a redetermination of probable cause that had been based on Garcia's claim that additional information should have been presented to the grand jury about the victim's having attacked Garcia before Garcia shot him. In denying the motion, the respondent judge found that, although "additional information might have been available . . . [and Garcia] may have a viable claim of self-defense[,] . . . that is ultimately a matter to be resolved by the trier of fact at the trial of this case."

3

## SPECIAL ACTION JURISDICTION

¶5 Although Garcia challenges the respondent judge's denial of his motion to remand for a new probable cause determination, *see* Rule 12.9, Ariz. R. Crim. P., 16A A.R.S., at oral argument on the special action petition, the parties agreed the respondent judge had stated that, were the new version of § 13-205 applicable, he would remand the case to the grand jury. Garcia also argues implicitly in his petition for special action and his supplemental memorandum, and argued directly at oral argument, that his challenge relates equally to the respondent judge's ruling that he would not instruct the trial jury according to the current version of the statute, a finding, essentially, that the new version of the statute is inapplicable to Garcia's case. The determination of whether the statute applies to him will affect the manner in which the parties prepare for and conduct the trial and, of course, how the jury will be instructed.

¶6 For a variety of reasons, we accept jurisdiction of this special action. A trial court's ruling on a challenge to a grand jury's finding of probable cause is not reviewable by appeal; rather, review must be obtained by special action. *State v. Gortarez*, 141 Ariz. 254, 258, 686 P.2d 1224, 1228 (1984). However, because the grand jury was instructed in accordance with the law that existed at the time it indicted Garcia, we would not be inclined to accept jurisdiction of this special action were that the only issue Garcia was raising. And, although Garcia conceded at oral argument that a challenge to jury instructions is raisable on appeal, we nevertheless find it appropriate to accept special action jurisdiction in this case.

4

**¶7** "[T]he availability of an appeal does not foreclose the exercise of this court's discretion to accept jurisdiction." *Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 493, 949 P.2d 983, 986 (App. 1997). The remedy by appeal may be inadequate, such as here, if the case proceeded under an incorrect version of the statute, which could affect the outcome of the case. *See id.* at 493-94, 949 P.2d at 986-87. Additionally, the interpretation and application of a statute is a question of law, which is subject to this court's *de novo* review. *Citizens Telecomms. Co. of White Mountains v. Ariz. Dep't of Revenue*, 206 Ariz. 33, ¶ 21, 75 P.3d 123, 128 (App. 2003). Questions of law are particularly appropriate for review by special action. *See State ex rel. Romley v. Fields*, 201 Ariz. 321, ¶ 4, 35 P.3d 82, 84 (App. 2001); *see also ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶ 8, 83 P.3d 1103, 1106-07 (App. 2004) (interpretation of state constitution and civil rule of procedure is question of law appropriately reviewed by special action). And, given the frequency with which justification defenses are raised in criminal proceedings, the issue raised in this special action likely will arise in numerous pending cases, making the applicability of § 13-205 "a question of statewide importance to the judiciary and the litigants who come before it in [criminal] matters." *Anderson v. Contes*, 212 Ariz. 122, ¶ 4, 128 P.3d 239, 241 (App. 2006); *see also Brush Wellman, Inc. v. Lee*, 196 Ariz. 344, ¶ 5, 996 P.2d 1248, 1250 (App. 2000); *O'Brien v. Escher*, 204 Ariz. 459, ¶ 3, 65 P.3d 107, 108 (App. 2003) (cases presenting purely legal issues that are of first impression and statewide importance and that could readily recur in other cases are particularly appropriate for special action review).

5

¶8        For these reasons, and because we conclude the respondent judge abused his discretion by finding the current version of § 13-205 inapplicable to Garcia's case, we accept jurisdiction and grant Garcia special action relief. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 285 (2003) ("[W]hen a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion."), *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982).

## DISCUSSION

¶9        Section 1-244, A.R.S., provides that "[n]o statute is retroactive unless expressly declared therein." Thus, statutes are presumptively prospective in application. *See Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 10, 11 P.3d 1006, 1009 (2000). Because § 13-205 was enacted as an emergency measure, it became "operative immediately as provided by law." 2006 Ariz. Sess. Laws, ch. 199, § 6; *see* Ariz. Const. art. IV, pt. 1, § 1(3). The legislature, however, did not specify what immediately operative meant. If a statute's language is unclear, we "'consider other factors such as the statute's context, history, subject matter, effects and consequences, spirit, and purpose.'" *State v. George*, 206 Ariz. 436, ¶ 6, 79 P.3d 1050, 1054 (App. 2003), *quoting State v. Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d 218, 220 (App. 2002). And, if a statute remains unclear after considering those factors, "'the rule of lenity dictates that any doubt should be resolved in favor of the defendant.'" *State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996), *quoting State v. Pena*, 140 Ariz. 545, 549-50,

6

683 P.2d 744, 748-49 (App. 1983), *aff'd*, 140 Ariz. 544, 683 P.2d 743 (1984). Considering the legislative history discussed below, we believe the legislature intended the statute to apply to cases like Garcia's that had not yet gone to trial when the statute went into effect, notwithstanding that the offense occurred before the effective date. Whether such an application is prospective or whether it is regarded as a retroactive application of the law, there is no constitutional or statutory impediment to such an application.

¶10          "The primary goal of statutory construction is to give effect to the intent of the legislature." *Cornman Tweedy 560, LLC v. City of Casa Grande,* 213 Ariz. 1, ¶ 8, 137 P.3d 309, 311 (App. 2006). In determining the legislature's intent in enacting a statute, appellate courts may consider the statute's legislative history, including the minutes of any legislative hearings. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 269 n.5, 872 P.2d 668, 673 n.5 (1994); *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 596, 667 P.2d 1304, 1311 (1983); *State v. Lammie*, 164 Ariz. 377, 379, 793 P.2d 134, 136 (App. 1990). Before 1997, when a defendant raised the slightest evidence that his or her criminal conduct had been justified, the burden shifted to the state to prove beyond a reasonable doubt that the defendant's conduct had not been justified. *See generally State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984); *see also Everett v. State*, 88 Ariz. 293, 297, 356 P.2d 394, 397 (1960). In 1997, the legislature enacted § 13-205, which placed the burden on the defendant to prove by a preponderance of the evidence any affirmative defense, including any justification defense. 1997 Ariz. Sess. Laws, ch. 136, § 4.

7

¶11    Comments of legislators during both the 2006 hearings of the Senate Judiciary Committee and the House Judiciary Committee demonstrate that S.B. 1145 was introduced because of the concern that placing the burden of proof on a defendant compromised a fundamental principle underlying this country's criminal justice system: the presumption that an accused is innocent until proven guilty. Senator Bee, for example, one of the primary sponsors of S.B. 1145, stated:

> This amendment changes a statute [t]hat we had in this state prior to, I believe, it was 1997 . . . . I believe it's extremely important that people in this country are innocent until proven guilty and when that change was made, it almost implies that by placing the burden of proof on the individual that they're guilty until proven innocent. So, to me, that's an extremely important part of this bill, perhaps the most important part.

S. Judiciary Comm. Minutes, 4th Leg., 2d reg. sess., Feb. 13, 2006, at 2.

¶12    Before voting on the bill, the chairman of the House Judiciary Committee noted similar concerns about the existing statute. He stated at the beginning of the meeting that he supported S.B. 1145 because he believed the burden must be on "the state, not upon the individual. The presumption is liberty. The presumption is innocence." H. Judiciary Comm. Minutes, 4th Leg., 2d reg. sess., Mar. 16, 2006, at 6. Before he cast his vote in favor of the bill, he commented,

> [W]e set the burden so high in every criminal case. We'd rather have a few bad people . . . get off . . . than to have innocent people put behind . . . bars. And that, in this society, is something that we have accepted as being a legitimate cost of a free people and protection of individual liberties . . . .

8

*Id*. at 35-36. Thus, the legislature's primary criterion for amending § 13-205—enforcement of the presumption of innocence—would be as applicable to cases awaiting trial as to offenses occurring after the effective date of the legislation.

¶13 Indeed, as Garcia points out, some of the legislators' comments showed they had been influenced by the case they referred to as the "Fish" case that had not yet proceeded to trial. *See, e.g.*, Rep. Downing comments, H. Judiciary Comm. Minutes, at 35 (noting case "certainly had an influence on me"). Criminal defense attorney and former judge Melvin McDonald testified before both the Senate and House Judiciary Committees about that case, a criminal prosecution that was pending in Flagstaff against Harold Fish. McDonald testified he represented the defendant, who would and, McDonald insisted, should benefit from the proposed statute because of the compelling nature of his defense of self-defense. S. Judiciary Comm. Minutes, at 10-12; H. Judiciary Comm. Minutes, at 24-29. McDonald argued it would be unfair for his client to have to sustain the burden that the existing statute placed on him.

¶14 We conclude, based on the statute's enactment as an emergency measure, which suggests the legislature intended to make the provisions applicable as soon as lawfully possible, and the legislative history discussed above, that the legislature intended the amendment of § 13-205 to apply to defendants whose cases had not yet been tried at the time the statute became effective regardless of whether the legislature considered such an application to be prospective or retroactive. But we must still determine whether such an

9

application is constitutionally and statutorily permissible. *See State v. Murray*, 194 Ariz. 373, 374-75, 982 P.2d 1287, 1288-89 (1999) ("[T]he legislature's intent about retroactive application 'does not end our analysis.'"), *quoting San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205, 972 P.2d 179, 189 (1999).

**¶15**       Traditionally, deciding whether a statute or rule can be applied retroactively begins with a determination of whether it is substantive or procedural in nature. "Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively.  Even if a statute does not expressly provide for retroactivity, it may still be applied [retroactively] if merely procedural because litigants have no vested right in a given mode of procedure." *State v. Fell*, 210 Ariz. 554, ¶ 22, 115 P.3d 594, 600 (2005), *quoting Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 11, 11 P.3d 1006, 1009 (2000). Although "[a] precise distinction between substantive and procedural rights or interests has proven elusive," *In re Shane B.*, 198 Ariz. 85, ¶ 9, 7 P.3d 94, 97 (2000),[2] based on our supreme court's decision in *State v. Fletcher*, 149 Ariz. 187, 717 P.2d 866 (1986), we conclude the relevant change to § 13-205 is substantive.

---

[2]In *Shane B.*, our supreme court added, "[n]evertheless, . . . 'it is generally agreed that a substantive law creates, defines, and regulates rights while a procedural one prescribes the method of enforcing such rights or obtaining redress.'"  198 Ariz. 85, ¶ 9, 7 P.3d at  97, *quoting Allen v. Fisher*, 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App. 1977).  The court stated that, "[i]n the criminal context, substantive law '"either defines a crime or involves the length or type of punishment."'"  *Id., quoting Lamb v. Kansas Parole Bd.*, 812 P.2d 761, 764 (Kan. Ct. App. 1991)*, quoting State v. Sutherland*, 804 P.2d 970, 977 (Kan. 1991).

¶16        The issue in *Fletcher* was whether A.R.S. § 13-502(B), which ascribed to defendants the burden of proving the affirmative defense of insanity, was procedural and therefore unconstitutional, given that it is within the supreme court's province, not the legislature's, to enact procedural rules. Finding "the burden of proof is considered substantive," not procedural, the supreme court held that the legislature had not violated the separation of powers doctrine by enacting the statute. 149 Ariz. at 192, 717 P.2d at 871. We see no meaningful distinction between § 13-205 and § 13-502. But the determination that the statute is substantive does not end our inquiry. We must additionally decide whether applying the statute to pending cases like Garcia's amounts to an improper retroactive application of substantive law.

¶17        To determine whether a new or amended statute is being applied impermissibly, we must examine whether the "legislation . . . disturb[s] vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189.[3] As our supreme court stated in *Hall v.*

_____

[3]We need not address the implications of *State v. Slemmer*, 170 Ariz. 174, 823 P.2d 41 (1991), and that line of jurisprudence. There, the supreme court adopted federal retroactivity principles in determining whether the rule it had announced in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), should apply retroactively to cases that were final when *Hunter* was decided in which the issue was raised on collateral review in a proceeding filed under Rule 32, Ariz. R. Crim. P., 17 A.R.S. We view the application of A.R.S. § 13-205 to cases not yet tried as a prospective application of the law. And, as discussed below, there is no statutory or constitutional impediment to applying the amended statute to defendants who allegedly committed acts before its effective date. Even if such an application is regarded as a limited retroactive application of the statute, *Slemmer* and its progeny are not relevant to the inquiry here.

11

*A.N.R. Freight System, Inc.*, 149 Ariz. 130, 139-40, 717 P.2d 434, 443-44 (1986), "[t]he critical inquiry in retroactivity analysis is not whether a statute affects a substantive right but whether a statute affects a *vested* right. Thus, the implicit meaning of the statement 'substantive rights may not be retroactively impaired' is 'substantive rights may not be impaired *once vested*.'" 149 Ariz. at 139-40, 717 P.2d at 443-44. To answer the question whether a statute is being applied retroactively and whether a vested right has been impaired, we must identify the operative event that is relevant to the statute's applicability.

¶18 In the criminal context, we generally "look to the date of the offense, rather than the date of adjudication, to determine retroactivity of application." *Shane B.*, 198 Ariz. 85, ¶ 7, 7 P.3d at 96. But that is because the date of the offense is the operative event for implication of the state and federal prohibitions against the enactment of *ex post facto* laws. *See* U.S. Const. art. I, § 10; Ariz. Const. art. II, § 25. The federal and state *ex post facto* provisions preclude the legislature from retroactively changing the definition of a crime or increasing the penalty for criminal conduct. *State v. Ring*, 204 Ariz. 534, ¶ 16, 65 P.3d 915, 926-27 (2003); *see also* A.R.S. § 1-246 (criminal defendant must be punished according to penalty that existed at time offense was committed); *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S. Ct. 2290, 2298 (1977) (*ex post facto* prohibitions preclude enactment of laws that affect substantive criminal law); *State v. Van Arsdale*, 133 Ariz. 579, 580, 653 P.2d 36, 37 (App. 1982) (law violates *ex post facto* prohibition when it "make[s] criminal that which was innocent when committed," increases or aggravates punishment, changes rules of evidence

to defendant's detriment, or deprives defendant of "substantial right or immunity possessed" when offense was committed).

¶19    The *ex post facto* prohibition is not implicated here. Section 13-205 neither changes the definition of an offense nor alters a criminal penalty.[4] Moreover, to the extent the state implicitly or otherwise draws support from the federal or state prohibitions, we find no authority that would give it standing to do so.[5] Finally, when a statute benefits a defendant, such as here, it is not an *ex post facto* enactment. *See Sanchez v. Ryan*, 178 Ariz. 88, 91, 870 P.2d 1184, 1187 (App. 1993) ("A criminal law is ex post facto if it applies to events occurring before its enactment and disadvantages the offender affected by it."). Consequently, there is no constitutional basis for making the date of the offense the operative event here.

¶20    The state contended, both in its response to Garcia's petition for special action and at oral argument, that the operative event for purposes of the amended statute is the date the case is "filed," by which the state apparently means the date of the indictment. The state argued that applying the amended statute to defendants such as Garcia amounts to an improper retroactive application of substantive law. But the state has cited no authority for

---

[4]Eliminating justification offenses as affirmative defenses that must be proven by a defendant does not affect the penalty for a crime nor does it "'change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Weaver v. Graham*, 450 U.S. 24, 31 n.12, 101 S. Ct. 960, 965 n.12 (1981), *quoting Hopt v. Utah*, 110 U.S. 574, 590, 4 S. Ct. 202, 210 (1884).

[5]At oral argument, the state suggested the constitutional *ex post facto* clause supports its position.

the proposition that the date of an indictment is the appropriate operative event for determining when a statute becomes applicable in the criminal context, nor are we aware of any.[6]

**¶21**    As we stated earlier, we believe the legislature intended the statute to apply to proceedings, including trials and grand jury hearings, that had not yet taken place when the statute became effective. The state has identified no vested right it has that would be abridged by applying § 13-205 to Garcia's pending case. *Cf. Naslund v. Indus. Comm'n*, 210 Ariz. 262, ¶¶ 11, 12, 110 P.3d 363, 366 (App. 2005) (finding that, because claimant for workers' compensation benefits had no vested right to benefits before effective date of amendment to statute that reduced her benefits, applying amended statute to her was not retroactive application). Thus, § 13-205 is prospectively applicable, not retroactive, much like the capital sentencing statutes the Arizona legislature enacted in response to the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002). The legislature specified that the amendments to A.R.S. §§ 13-703 and 13-703.02 and the addition of A.R.S. § 13-703.01 applied "to any sentencing or resentencing proceeding on any first degree murder case that is held after the effective date of this act," August 1, 2002.

---

[6]In its response, the state cites A.R.S. § 1-244 and article IV, pt. 1, § 1(3) of the Arizona Constitution. The former merely provides that "[n]o statute is retroactive unless expressly declared therein." The latter simply grants the legislature the power to enact a law as an emergency measure, rendering it immediately effective rather than effective ninety days after the close of the legislative session in which the law is enacted. Neither provision mentions the date a case is "filed" as having any significance relative to the effective date of a criminal statute.

2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 7(A).[7] The new capital sentencing statutes

were viewed as prospective. Like § 13-205, they were intended to apply to proceedings that

had not yet occurred. The operative event for purposes of § 13-205 is the trial or grand jury

proceedings that have yet to take place; for the capital sentencing statutes, the operative event

is sentencing or resentencing.[8] *See Hall*, 149 Ariz. at 137-38, 717 P.2d at 441-42 (in

determining whether statute adopting comparative negligence could constitutionally apply

to cases arising before statute's effective date, court found operative date was complaint

---

[7]Courts have found, to the extent application of newly enacted capital sentencing statutes to defendants who committed acts before the statutes' effective date amounts to a retroactive application of the law, the application is permissible because the statutes are procedural in nature. *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523 (2004) (finding decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), not applicable to cases already final on direct review because *Ring* announced new procedural, not substantive, rule); *State v. Ring*, 204 Ariz. 534, ¶ 24, 65 P.3d 915, 928 (2003) (finding enactment of § 13-703.01 not *ex post facto* violation because change in determining whether first-degree murder defendant should be sentenced to death from judge to jury was procedural).

[8]In contrast to § 13-205, A.R.S. § 13-703.01(Q)(2) was a substantive change in the sentencing law that our supreme court held could not be applied to defendants who had committed their offenses before the statute's effective date. *State v. Fell*, 210 Ariz. 554, ¶¶ 20-23, 115 P.3d 594, 600 (2005). Before § 13-703.01(Q)(2) was enacted, *see* 2003 Ariz. Sess. Laws, ch. 255, § 2, and at the time the defendant in *Fell* committed his offense, sentencing judges could consider the ten aggravating circumstances listed in A.R.S. § 13-703(F) when deciding whether to sentence a defendant convicted of first-degree murder to life imprisonment with the possibility of parole or to natural life imprisonment. Section 13-703.01(Q) permits judges to consider the twenty-three aggravating circumstances now enumerated in A.R.S. § 13-702(C). The supreme court rejected the state's argument that the new provision should apply to the defendant's pending sentencing hearing. The court found the statute was substantive, not procedural. 210 Ariz. 554, ¶ 23, 115 P.3d at 600. But, unlike § 13-205, § 13-703.01(Q) effectively changed the penalty that could be imposed on a defendant and was disadvantageous to defendants, thus implicating the *ex post facto* prohibitions.

15

filing date because that was when defendant acquired vested right to assert affirmative defense of contributory negligence); *see also In re Commitment of Frankovitch*, 211 Ariz. 370, ¶ 8, 121 P.3d 1240, 1243 (App. 2005) (rejecting argument that operative date for determining applicability of statute eliminating right to jury trial in sexually violent persons cases is date petition was filed to have person committed as sexually violent; "operative date" is date person is found sexually violent "and any rights related to hearings on petitions for release vest only at that time").

¶22        The situation before us is distinguishable from that in *State v. Coconino County Superior Court*, 139 Ariz. 422, 678 P.2d 1386 (1984). There, the supreme court held that the defendant who had allegedly committed acts before the effective date of a change in A.R.S. § 13-502 had to be tried under the version of that statute in effect when he committed the offense. Under the former version of the statute, a defendant was presumed sane, but could rebut that presumption with evidence that "generated substantial and reasonable doubt as to his [or her] sanity." 139 Ariz. at 426, 678 P.2d at 1390. The burden then shifted to the state to prove beyond a reasonable doubt that the defendant was sane. Under the amended version, however, a defendant was required to prove by clear and convincing evidence that he or she was not criminally responsible by reason of insanity.

¶23        The court in *Coconino County* chose not to decide the case based on the defendant's argument that applying the new version of the statute to him violated the federal prohibition against *ex post facto* laws. Rather, the court decided that, because "nothing in

16

the new provisions of A.R.S. § 13-502 . . . indicates a legislative intent to make the new provisions retroactive," the applicable burden of proof at the time the offense was committed was the burden to be applied in the defendant's case. 139 Ariz. at 427, 678 P.2d at 1391. In contrast, the legislative history of § 13-205 and its enactment as an emergency measure clearly reflect the legislature's intent to give the statute immediate application. This can only mean its provisions apply to as-yet untried defendants. The federal and state *ex post facto* prohibitions potentially were implicated in *Coconino County* only because the change in § 13-502 increased the defendant's burden. For the same reason, it altered the defendant's vested rights. Here, the current version of § 13-205 relieves defendants of the burden they had under former § 13-205. Moreover, the current version of the statute does not "retroactively alter the definition of the crime" of first-degree murder with which Garcia is charged. *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990); *see also State v. Rosenberry*, 210 Ariz. 360, ¶ 18, 111 P.3d 402, 406-07 (2005) (rejecting argument that new death penalty statute violated *ex post facto* provisions of state and federal constitutions "[b]ecause this procedural change does not retroactively alter the definition of the crime of murder or increase the penalty"). The amended statute therefore alters no vested rights of any party entitled to assert them.

¶24        Nor does the supreme court's decision in *State v. Fletcher*, 149 Ariz. 187, 717 P.2d 866 (1986), require us to reach a different result. There, the court was not asked to address the question of the amended statute's applicability after determining the amendment

17

was substantive. *Id*. at 192-93, 717 P.2d at 871-72. And, unlike here, the amended statute in *Fletcher* was detrimental to defendants, adding to the burden they had at the time they committed offenses. *Id*.

¶25 Division One's decision in *State v. Gilfillan*, 196 Ariz. 396, 998 P.2d 1069 (App. 2000), which cited *Fletcher*, is similarly distinguishable. There, the court rejected the defendant's contention that "the legislature [had] invaded the province of the Arizona Supreme Court by enacting the Arizona Rape Shield Law [A.R.S. § 13-1421] and establishing 'clear and convincing' as the quantum of proof necessary for the admissibility of such evidence." 196 Ariz. 396, ¶¶ 24-27, 998 P.2d at 1076. The court held the statute was substantive, not procedural, because it involved establishing a burden of proof. *Id*. ¶ 27. But retroactivity and applicability were not issues in that case. And again, there, unlike here, the new statute increased the burden on defendants.

**CONCLUSION**

¶26 Section 13-205 affects how the parties in this case prepare for trial and how trial is to be conducted. For that reason, a defendant's trial is the operative event for applying a statutory amendment that was enacted as an emergency measure, rendering it effective immediately. The legislature therefore intended the statute to apply to pending cases that had not yet gone to trial. Although we view that as a prospective application of the statute, even assuming it may be construed retroactively when applied to defendants who committed offenses before the amendment's effective date, we find no constitutional or statutory

18

impediment to such an application. Therefore, we hold that § 13-205 applies to defendants like Garcia who allegedly committed offenses before the effective date of the amendment but who have not yet been tried. We accept special action jurisdiction and grant relief by reversing that portion of the respondent judge's order of May 9, 2006, in which he essentially found § 13-205 inapplicable by denying Garcia's motion to instruct the jury in accordance with the current version of the statute.

 

 

 

PHILIP G. ESPINOSA, Judge

CONCURRING:

 

 

PETER J. ECKERSTROM, Presiding Judge

 

 

J. WILLIAM BRAMMER, JR., Judge

19